UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ERC PROPERTIES, LLC,** | } |
| | } |
| | } |
| **Plaintiff,** | } |
| | } |
| | } |
| | } |
| **v.** | }   Case No.:  2:20-cv-01074-MHH |
| | } |
| | } |
| **COUSINS INSURANCE AGENCY, INC. & EVANSTON INSURANCE COMPANY,** | |
| | |
| **Defendants.** | |

### MEMORANDUM OPINION AND ORDER

ERC Properties has asked the Court to return this Alabama insurance action to the Circuit Court of Jefferson County, Alabama. (Doc. 6). One of the defendants, Evanston Insurance Company, removed the action from state court to federal court on the basis of diversity jurisdiction. (Doc. 1). Evanston contends that "Cousins [Insurance Agency] is not required to consent to removal because . . . it is fraudulently joined in the Complaint." (Doc. 1, p. 2, n.1). ERC asserts several state law fraudulent misrepresentation, fraudulent suppression, negligence, and breach of contract claims against these defendants relating to a commercial insurance policy

1

that ERC purchased in October 2018. Evanston contends that ERC fraudulently joined invalid claims against Cousins (an Alabama citizen), to its claims against Evanston (an Illinois citizen) to avoid federal jurisdiction. This memorandum opinion addresses the fraudulent joinder issue.

## I.     Background and Procedural History

ERC Properties bought an Evanston Insurance Company commercial insurance policy through Cousins Insurance Agency. (Doc. 1-1, p. 3, ¶ 1). The policy covered "Warehouses" located in Birmingham, Alabama. (Doc. 1-1, p. 3, ¶ 1). ERC alleges that the Cousins insurance agent told ERC that the policy's coverage limit "was sufficient to cover any and all covered loss damages." (Doc. 1-1, p. 3, ¶ 2).

Several weeks after buying the Evanston policy, Cousins mailed ERC a package containing a cover letter stating:

> Enclosed please find the above referenced renewal policy effective 10.26.2018. Please take a few minutes to review the policy so you will be aware of the coverage's and exclusions that apply.
>
> Should you have any questions or necessary corrections to the policy, please contact me as soon as possible.

(Doc. 1-2, p. 1). The enclosed "Commercial Property Coverage Part Declarations" included a description of the premises, the coverage provided, a blank spot for optional coverages, and ERC's deductible and premium. (Doc. 1-3, pp. 1–2). The

2

policy's "limit of insurance" was $250,000.  (Doc. 1-3, p. 1).  ERC did not buy optional coverage from Evanston or supplemental insurance policies from other insurance companies.  (Doc. 1-3, p. 1; Doc. 1-1, p. 3, ¶ 3).

In August 2019, ERC's insured building suffered fire damage, and ERC notified Cousins and Evanston.  (Doc. 1-1, p. 3, ¶ 4).  Cousins and Evanston told ERC the fire damage exceeded ERC's policy limit.  (Doc. 1-1, p. 3, ¶ 4).  ERC hired a contractor who estimated the repairs would cost $310,487.  (Doc. 1-4, p. 3). Several months after the fire, ERC asked Evanston why its policy "was non-renewed as this was our first claim."  (Doc. 1-4, p. 1).  In a letter to Evanston, ERC asserted that Evanston's "estimate of $81,000.00 +/- does not begin to properly pay for the loss."  (Doc. 1-4, p. 1).  ERC also stated that Evanston's "actions of non-renewal without a legitimate basis and failure to pay the true damages has cost us the ability the obtain new coverage with a damaged building that cannot be repaired under the estimate you submitted."  (Doc. 1-4, p. 1).

To resolve its dispute over the coverage available under its Evanston policy, ERC sued Evanston and Cousins in state court.  ERC named Cousins in three of the four counts in the state court complaint.  In Count I, ERC alleges that Cousins, acting as Evanston's agent, employee, or representative, "represented to [ERC] that the coverage limits of the insurance policy being applied for with . . . Evanston was sufficient to cover any and all covered loss damages under the Evanston policy of

3

insurance." (Doc. 1-1, p. 3, ¶ 2). Based on the representation, ERC bought Evanston's policy and "refrained from and did not seek out the insurance coverage desired from any other insurance source." (Doc. 1-1, p. 3, ¶ 3). ERC alleges that based on this fraudulent misrepresentation, it "did not receive the coverage as represented; . . . did not seek out the desired coverage from another source; . . . [and was] caused to lose the full use of its business property . . . ." (Doc. 1-1, p. 4, ¶ 9).

In Count II, ERC alleges that Cousins "fraudulently concealed and/or failed to disclose to [ERC] that the insurance coverage limits would not be sufficient to cover any and all covered loss damages under the Evanston policy of insurance as had been represented to it." (Doc. 1-1, p. 4, ¶ 11). ERC "acted as a result of the non-disclosure and/or concealment and changed its position as set forth above." (Doc. 1-1, p. 4, ¶ 12). And in Count III, ERC alleges that Cousins "innocently, recklessly, negligently, or wantonly made the aforementioned misrepresentations and/or concealed the material facts to and from [ERC] . . . and [was] otherwise negligent or wanton in [its] dealings with [ERC] . . . ." (Doc. 1-1, p. 5, ¶ 15).[1]

For purposes of subject matter jurisdiction, Cousins and ERC are citizens of Alabama. (Doc. 1, p. 2, ¶¶ 4, 6; Doc. 1-1, p. 2, ¶¶ 1–2). Evanston is a citizen of

---

[1] Cousins brings a fourth claim against only Evanston. In Count IV, ERC alleges it maintained a commercial insurance contract with Evanston, it suffered a covered loss, and Evanston breached the contract by failing to comply with the loss settlement terms and by failing to properly investigate ERC's claim. (Doc. 1-1, pp. 5–6, ¶¶ 18–20).

Illinois.  (Doc. 1, p. 2, ¶ 5).  Citing 28 U.S.C. § 1441, Evanston removed this action to federal court because, according to Evanston, a federal court may exercise jurisdiction over ERC's state law claims under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship among the parties.  (Doc. 1, p. 1–2, ¶ 2; Doc. 1, pp. 9–10, ¶ 10).  Evanston argues the Court should disregard Cousins's citizenship because "even if proven true, the facts alleged in the Complaint are insufficient to establish a cause of action against Cousins on any of the fraud claims."  (Doc. 1, p. 3, ¶ 9).  Evanston contends that because ERC was under a duty to read its insurance contract, ERC could not have reasonably relied on Cousins's statements, and therefore cannot maintain fraud claims against Cousins under Alabama law.  (Doc. 1, p. 3, ¶ 9).

ERC disagrees.  First, ERC argues Evanston failed to address the general negligence and wantonness claim ERC asserted against Cousins in Count III.  (Doc. 6, p. 3).  Second, ERC contends the only document it received that Evanston can point to as putting ERC on notice is the insurance policy itself.  (Doc. 8, p. 9).  ERC states that "[t]here has been no evidence submitted to the Court by . . . Evanston" to support the assumption that ERC knew or should have known that the $250,000 policy was an inadequate policy to pay for any covered losses to ERC's building.  (Doc. 8, p. 9).  Accordingly, ERC argues that Evanston cannot establish fraudulent

joinder fails, and in the absence of fraudulent joiner, this Court may not exercise jurisdiction over ERC's state law claims. (Docs. 6, 8).

## II.   Analysis

When deciding a motion to remand, "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal citation omitted). For federal jurisdiction to exist under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010). "[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal." *PTA-FLA v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016).

Generally, when jurisdiction is lacking because, for example, a defendant is a citizen of the state in which the plaintiff filed suit, then a district court must remand the action to state court. 28 U.S.C. § 1441(b)(2). But "if a defendant shows that 'there is no possibility the plaintiff can establish a cause of action against the resident defendant,' then the plaintiff is said to have fraudulently joined the non-diverse defendant." *Florence v. Crescent Resources, Inc.*, 484 F.3d 1293, 1297 (11th Cir. 2007) (quoting *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th

Cir. 2006)) (footnote omitted). "In that situation, the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence*, 484 F.3d at 1297; *see also Henderson*, 454 F.3d at 1281. The removing party bears the heavy burden of proving fraudulent joinder. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see generally Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

The United States Court of Appeals for the Eleventh Circuit has identified three scenarios in which a non-diverse defendant may be fraudulently joined: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; and (3) "where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citations omitted). Here, Evanston contends that ERC "can never prove reasonable reliance and all of [its] claims against Cousins are barred as a matter of law." (Doc. 1, pp. 3–4, ¶ 9). Therefore, Evanston must establish "by clear and convincing evidence that there is no possibility that [ERC] can establish a cause of action against the resident defendant," Cousins. *Henderson*,

454 F.3d at 1283 (internal citations and quotations omitted).

To avoid fraudulent joinder, ERC does not have to a have winning case; it "need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. "In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

In Count One, ERC asserts a fraudulent misrepresentation claim against Cousins. (Doc. 1-1, pp. 3-4, ¶¶ 1-9). Under Alabama law, "[t]he elements of a fraudulent-misrepresentation claim are: '(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate cause of the misrepresentation.'" *Sexton v. Bass Comfort Control, Inc.*, 63 So. 3d 656, 662 (Ala. Civ. App. 2010) (quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988)).

ERC alleges Cousins falsely represented the material existing fact that the Evanston insurance policy would be sufficient to cover any of its covered losses, that ERC reasonably relied upon Cousins's statement when it did not seek supplemental coverage or additional policies, and ERC suffered damage because of Cousins's misrepresentation when its insured property suffered fire damage

exceeding the Evanston policy limit. (Doc. 1-1, pp. 3–4, ¶¶ 2-9). Thus, there is a possibility that ERC may prove its fraudulent misrepresentation claim against Cousins. The unadorned $250,000 policy limit which Cousins disclosed to ERC in November 2018, (Docs. 1-2, 1-3), does not necessarily dispose of the misrepresentation claim.

In Count Two, ERC asserts a fraudulent suppression claim against Cousins. Under Alabama law, "[t]he elements of a claim of fraudulent suppression are: '(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.'" *Sexton*, 63 So. 3d at 662 (quoting *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010)).[2]

ERC alleges Cousins concealed or did not disclose material facts about the Evanston insurance policy, and this concealment or nondisclosure led ERC to buy only the Evanston policy. (Doc. 1-1, p. 4, ¶¶ 10–13). In its motion to remand, ERC argues Cousins "assum[ed] the duty to adequately insure [ERC's] building" and therefore was in a position of superior knowledge to create the duty to disclose. (Doc. 9, pp. 7–8) (citing *Indep. Life & Accident Ins. Co. v. Harrington*, 658 So. 2d

---

[2] Count III appears to be subsumed within the fraudulent misrepresentation and fraudulent suppression claims. Because the Court will grant the motion to remand, the Court does not address this claim.

892, 896 (Ala. 1994) (A duty to disclose arises "where one party has superior knowledge of a fact and the other party's having the same knowledge would cause the other party to take a different course of action.")). Evanston does not argue that ERC failed to sufficiently plead Cousins owed ERC a duty. And to resolve ERC's motion to remand, the Court only must decide whether ERC may possibly prove its fraudulent suppression claim against Cousins. Alabama law does not foreclose the claim.

The Eleventh Circuit addressed a similar issue in *Stillwell v. Allstate Ins. Co.* There, Allstate Insurance argued the plaintiff fraudulently joined the non-diverse insurance agent that sold him his policy. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1331–32 (11th Cir. 2011). The district court denied the plaintiff's motion to remand, concluding the plaintiff fraudulently joined non-diverse insurance agent. *Stillwell*, 663 F.3d at 1332. The Eleventh Circuit contrasted the fraudulent joinder standard with the standard of review for a Rule 12(b)(6) motion, stating "all that is required to defeat a fraudulent joinder claim is 'a possibility of stating a valid cause of action.'" *Stillwell*, 663 F.3d at 1333 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). In concluding the district court erred in denying the plaintiff's motion to remand, the Eleventh Circuit concluded "[a]s the allegations against [the non-diverse insurance agent] state the elements of [the Georgia state law claims] and give [the defendant] fair notice that it is being sued

10

for [breach of those state law claims], it is, at the very least, possible that a . . . state court would conclude that [plaintiff's] allegations against [the non-diverse defendant] satisfied this standard." *Stillwell*, 663 F.3d 1334–35.

Here, ERC's allegations against Cousins state the elements of Alabama state law claims for fraudulent misrepresentation and suppression.[3] Cousins is on notice as to those claims; in fact, Cousins has answered those claims. (*See* Doc. 1-1, pp. 37-49). Because ERC has sufficiently stated claims against Cousins under Alabama law, Evanston has not met its burden of establishing fraudulent joinder.

## III.  Conclusion

For the reasons above, the Court grants ERC's motion to remand. (Doc. 6). The Court directs the Clerk to please return this action to the Circuit Court of Jefferson County, Alabama.

**DONE** and **ORDERED** this October 23, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[3] Given its findings regarding Counts 1 and 2, the Court does not have to consider whether ERC may state sperate claims under Alabama law for negligent or wanton misrepresentation or suppression per Count 3.